[Civ. No. 39841. Second Dist., Div. Three. May 4, 1972.]

EDWARD J. KIRBY, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
NORMETH, INC., Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Petitioner.

Floyd R. Mitzner for Respondent.

Lee, Byhower & Frank and Robert R. Lee for Real Party in Interest.

## Opinion

SCHWEITZER, J.—The Director of the Department of Alcoholic Beverage Control (department) filed an accusation against Normeth, Inc., doing business as The LaBrea Inn (licensee) alleging that the licensee permitted named male employees to solicit named females to engage in acts of prostitution with patrons of the licensee; that said conduct constituted violations of article XX, section 22, California Constitution and section 24200, subdivision (a), Business and Professions Code (conduct contrary to public welfare or morals), and also violations of section 25601, Business and Professions Code (maintaining a disorderly house) and section 647, subdivision (b), Penal Code (solicitation of prostitution); and that as a result thereof grounds for suspension or revocation of the licensee's on-sale liquor license exist under article XX, section 22, California Constitution and section 24200, subdivision (a) and (b), Business and Professions Code.

The department adopted the hearing officer's proposed decision, including findings that the alleged conduct was true and the conclusions that the licensee had violated section 25601, Business and Professions Code and section 647, subdivision (b), Penal Code, and ordered that the license be revoked. It should be noted that the department made no specific finding with respect to the alleged violations of article XX, section 22, California Constitution or section 24200, subdivision (a), Business and Professions Code. The licensee appealed the department's decision to the Alcoholic Beverage Control Appeals Board (board) which determined that the evidence is sufficient to support the findings, but that the conclusion that the licensee had violated both statutes is not supported by the findings; the board reversed the department's decision ordering revocation of the license.

The department has filed a petition for review. By answer the licensee contends that the evidence was insufficient to support the department's findings. By answer the board contends that the evidence is sufficient to support the findings but that the department erred in charging and concluding that the licensee violated section 647, subdivision (b), Penal Code.

With respect to these contentions we are governed by principles set forth in *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control*, 2 Cal.3d 85, 94-95 [84 Cal.Rptr. 113, 465 P.2d 1]: "Insofar as the Department's factual findings are concerned, the scope of review is strictly limited. Since the Department is an agency upon which the Constitution has conferred limited judicial powers (Cal. Const., art. XX, § 22), the reviewing court is not entitled to exercise its independent judgment on the effect or weight of the evidence, but is simply called upon to determine whether the findings are supported by substantial evidence in the light of

the whole record. [Citations.] . . . [¶] A different set of principles governs our review of administrative action to the extent that it consists of declarations or applications of legal rules or is the statement of the conclusions of law which are drawn from facts found in an adjudicatory proceeding. We delineated the scope of our review in this regard in *Covert* v. *State Board of Equalization,* . . . 29 Cal.2d 125 in these terms: '[T]he decisions of the Board are final, subject to review for excess of jurisdiction, errors of law, abuse of discretion and insufficiency of the evidence, . . .' (29 Cal.2d at p. 132.)" (Fns. omitted.)

### Sufficiency of the Evidence

In examining the sufficiency of the evidence, all conflicts must be resolved in favor of the department, and all legitimate and reasonable inferences indulged in to uphold its findings if possible. When findings are attacked as being unsupported by the evidence, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the department. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, pp. 4236-4238.) With these principles in mind we review the evidence in the light most favorable to the respondent.

The following events occurred on the licensed premises. Two prostitutes, Carolyn and Michelle, each acting as an undercover agent for the police, patronized the premises. On May 14, 1968 Joe, the bartender, gave Carolyn the name and telephone number of a man who needed a prostitute for his wealthy clients. On May 29 Joe introduced Carolyn to Nick, the manager of the licensee, who in turn introduced her to a patron who was a good "score" (a customer who pays well for prostitution). On June 3 Jerry, the piano player, introduced Michelle and a girl friend to two patrons of the licensee who desired acts of prostitution. On June 18 Jerry introduced Michelle to a customer who offered to help her in her prostitution business. On August 20 Jerry and Nick introduced Michelle to two men from Miami; during the conversation it was stated that the two visiting men were active in syndicated prostitution; Jerry suggested that Michelle and another girl, Joyce, work together as they "could make a lot of money." On August 21 Nick, Joe and Jerry told Michelle that they could help her. On October 2 Nick told Michelle that he had a prostitution business in Mexico and offered her the opportunity to work there for him. On October 14 Nick asked Michelle to move into his apartment and told her that she could use it for prostitution purposes.

Viewing this evidence in the light of the principles heretofore stated, we agree with the board in its conclusion that the evidence is sufficient to support the findings of the department.  ■  We turn to the contention that these facts do not support the department's conclusions.

### Section 25601, Business and Professions Code

Section 25601 provides: "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used, in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor."

As stated in *Boreta, supra,* 2 Cal.3d 85, 97: "It is apparent that three distinct courses of conduct are described by section 25601: first, the keeping of a disorderly house; second, the keeping of a house which disturbs the neighborhood; and third, the keeping of a house to which people resort for purposes which injure, inter alia, public morals." *Boreta* involved the employment by a licensee of "topless" waitresses; the court's factual comment is applicable to the instant case: "It is clear from the record that the decision of the Department could not have properly been based on either of the latter two grounds since there was absolutely no evidence that the licensed premises disturbed the neighborhood or that people resorted to such premises for any of the purposes condemned by the statute. Thus, the determination that section 25601 was violated must, perforce, have been based on the conclusion that it constituted a 'disorderly house.' " (2 Cal.3d at p. 97.)

The Supreme Court then reviewed the numerous cases pertaining to disorderly houses (fns. 18-21, pp. 97-99) and stated at pages 97-98: "A review . . . of cases involving revocations of licenses for violations of section 25601 reveals that the term has not been confined to its earlier meaning [house of prostitution]. Instead, it has been applied to a relatively wide range of activities occurring on licensed premises which have involved threats to the safety or tranquility of the surrounding neighborhood [fn. omitted] or conduct which is either independently illegal [fn. omitted] or consists of overt public displays of and attempts to gratify sexual (usually homosexual or lesbian) desires. [Fn. omitted.]" The court then pointed out that the cases either omitted or used unacceptable definitions of the term "disorderly house," and added at pages 98-99: "We offered a negative definition of the term in *Stoumen* v. *Reilly* (1951) 37 Cal.2d 713 [234 P.2d 969] when we held that simply showing patronage

of a premises by homosexuals was insufficient to support a revocation of its license as a disorderly house. We said, '[P]roof of the commission of illegal or immoral acts on the premises, or resort thereto for such purposes' is required. (37 Cal.2d at p. 716.) No claim is made that the conduct described in the accusations now before us [topless waitresses] was illegal other than as a violation of section 25601 itself. No case has held such conduct sufficiently 'immoral' to warrant revocation under section 25601. Resolution of whether the Department's conclusion [revocation of license] could properly have been made on this second ground (i.e., immoral conduct) involves considerations identical to whether its conclusion, on this record, that the conduct was 'contrary to public welfare or morals' under article XX, section 22 and section 24200, subdivision (a), was proper."

Although no party attacks section 25601 upon the ground that it is so vague and uncertain as to be violative of the constitutional requirement of due process, we have no hesitancy in upholding its constitutionality. The statute is not as vague and uncertain as section 182, subdivision 5, Penal Code, which provides that it is a crime for two or more persons "[t]o commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws." Attacks on the constitutionality of this section have been consistently overruled. (*Calhoun* v. *Superior Court,* 46 Cal.2d 18, 31 [291 P.2d 474]; *Lorenson* v. *Superior Court,* 35 Cal.2d 49, 59-61 [216 P.2d 859]; *People* v. *Rehman,* 253 Cal.App.2d 119, 150-154 [61 Cal.Rptr. 65].)

*Boreta* expressly holds that section 25601 may be violated if there be *either* illegal or immoral acts on the licensed premises. Here we have substantial evidence of the commission of illegal acts on the licensed premises: pandering, attempted pandering and conspiring to operate a house of prostitution. We know of no requirement that the criminal statute must be specifically alleged. Here we also have substantial evidence of the commission of immoral acts on the licensed premises. The licensee had the responsibility to see to it that its employees committed no illegal or immoral acts on the licensed premises. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.,* 197 Cal.App.2d 172, 181 [17 Cal.Rptr. 315].) The department's decision that the licensee conducted a disorderly house under section 25601 must therefore be upheld on each ground.

This conclusion is not inconsistent with *Vallerga* v. *Dept. Alcoholic Bev. Control,* 53 Cal.2d 313 [1 Cal.Rptr. 494, 347 P.2d 909]. In *Vallerga* an accusation charged the licensees with only one violation, former section 24200, subdivision (e), Business and Professions Code (permitting sexual perverts to resort on licensed premises); the section was held to be unconstitutional; the court noted, however, that even though the evidence was

sufficient to support a finding that the conduct was "contrary to public welfare and morals" (Cal. Const., art. XX, § 22), since no charge thereof or finding thereon had been made, the decision could not be upheld on that ground because of the constitutional requirement of due process of law. (53 Cal.2d at p. 321.) Here the constitutional objection has been satisfied; the licensee was charged with and found to have violated section 25601.

### Section 647, Subdivision (b), Penal Code

The department concluded that the licensee violated section 647, subdivision (b), which reads in pertinent part: "Every person who commits any of the following acts . . . is guilty of disorderly conduct, a misdemeanor: [¶] . . . (b) Who solicits or who engages in any act of prostitution. As used in this subdivision, 'prostitution' includes any lewd act between persons for money or other considerations."

The board determined that the evidence sustained the department's findings but that the department erred in charging and concluding that the licensee violated section 647, subdivision (b) for the following reasons: (1) the correct charge for pandering is section 266i, Penal Code; (2) solicitation, as referred to in section 647, subdivision (b), applies only to a prostitute, not to a third party; and (3) the section applies only to conduct by females, citing *In re Carey* (1922) 57 Cal.App. 297, 306-307 [207 P. 271].

From comments heretofore made it is readily apparent that under the circumstances presented herein, the offenses proscribed by section 647, subdivision (b) are included within the broader provisions of section 25601. It is therefore unnecessary for us to determine the correctness of the issues presented by the board. However, with respect to the third contention, it should be noted that section 647, subdivision (b), was enacted after *Carey*; it now applies to "every person" regardless of sex.

### Article XX, Section 22, California Constitution, and Section 24200, Subdivision (a), Business and Professions Code

■ Article XX, section 22, and section 24200, subdivision (a), provide that conduct contrary to public welfare and morals is a ground for revocation or suspension of a liquor license. The board argues that since the accusation charged the licensee with violating each section, the department erred in not making an express determination thereon.

We do not agree. As we have pointed out, *Boreta, supra,* 2 Cal.3d 85, 97, states that the considerations in determining whether licensed premises constitute a "disorderly house" because of illegal and immoral acts on the

premises, under section 25601, may be identical to the considerations in determining whether conduct on licensed premises is "contrary to public welfare or morals" under article XX, section 22 and section 24200, subdivision (a). In the instant case they are identical. Being identical, it was unnecessary for the department to make any conclusion as to a violation of these sections; allegations of violation thereof were at most superfluous.

It should be noted, however, that the department in its decision correctly referred to the two sections as its authority for the imposition of disciplinary action; this reference satisfied all legal requirements.

Since the findings and conclusion of the department that the licensee violated section 25601, Business and Professions Code, are supported by substantial evidence, the decision of the department must be affirmed.

The order of the board is reversed with directions to affirm the decision of the department.

Ford, P. J., and Cobey, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied June 29, 1972.